1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NAYEREH MADANI,<br><br>        Plaintiff,<br><br>    v.<br><br>COUNTY OF SANTA CLARA,<br><br>        Defendant. | Case No. 16-CV-07026-LHK<br><br>**ORDER GRANTING MOTION TO ENFORCE THE SETTLEMENT**<br><br>Re: Dkt. No. 106 |

Before the Court is the motion to enforce the parties' settlement filed by Defendant County of Santa Clara ("County"). ECF No. 06 ("Mot."). Having considered the parties' submissions, the relevant law, and the record in this case, the Court GRANTS Defendant's motion.

I.     **BACKGROUND**

    **A.  Madani and her First Attorney Seth Wiener's Settlement with the County**

This lawsuit began back in 2016 when Plaintiff Nayereh Madani ("Madani") filed her initial complaint against the County on December 8, 2016. ECF No. 1. Over half a year later, on July 15, 2017, the parties began settlement discussions with Evaluator Katherine Clark for an Early Neutral Evaluation. ECF No. 52. At this time, Madani was represented by counsel, Seth Wiener ("Wiener"). *See* ECF No. 53. The parties continued settlement discussions. ECF No. 106-

2 ("12/21/18 Sandoval Decl.") ¶ 4–5.

On October 2, 2017, the County obtained approval from the County of Santa Clara Board of Supervisors (the "Board") of the parties' settlement terms. *Id.* ¶¶ 4–5. Around October 13, 2017, the County sent Wiener a final draft settlement for his review. *Id.* ¶ 6. On October 27, 2017, the parties wrote in their joint case management statement that "[t]he County has provided a proposed Settlement Agreement and General Release to Madani, and Madani is currently reviewing and making proposed edits to the same." ECF No. 53. On December 6, 2017, the parties filed a further joint case management statement representing that the case was settling:

> The County provided a proposed Settlement Agreement and General Release to Madani in October 2017. Unfortunately, Madani has been preoccupied with providing medical care for her husband, and has been traveling in Iran since November 2017 to pay respect[ ] to her husband's family members. It is the expectation of the Parties' counsel that the settlement agreement will be finalized in January 2018 when Madani is scheduled return to the United States.

ECF No. 57.

On January 16, 2018, Madani and Wiener stipulated to Wiener's withdrawal from the case. ECF No. 59. On January 22, 2018, the Court granted the stipulation of withdrawal. ECF No. 63. Following the withdrawal of Wiener, Madani represented herself in the action pro se. *See id.* Proceeding pro se, Madani then refused to sign the October 13, 2017 draft settlement agreement. 12/21/18 Sandoval Decl. ¶ 11.

On January 29, 2018 the parties attended an additional mediation session with Katherine Clark. *Id.* ¶ 12. That mediation session was unsuccessful. *Id.*

On March 5, 2018, the parties filed a stipulation requesting to be assigned a new mediator and to attend mediation through the Court's ADR Program. ECF No. 69. On March 5, 2018, the Court granted the parties' stipulation. ECF No. 70. On May 8, 2018, the parties attended a mediation session with the former United States Magistrate Judge Wayne D. Brazil. ECF No. 77. That mediation session was also unsuccessful. *See id.*

**B. Madani and her Second Attorney David Poore's Settlement with the County**

On May 30, 2018, Madani retained new counsel, David M. Poore ("Poore"). ECF No. 78.

At the parties' June 6, 2018 case management conference, Madani requested an additional settlement conference. 12/21/18 Sandoval Decl. ¶ 16. The County agreed, and the Court referred the parties to the United States Magistrate Judge Nathanael M. Cousins for an August 24, 2018 settlement conference. *Id.*; *see also* ECF No. 84 ("The Court referred the parties to a Magistrate Judge Settlement Conference with Judge Cousins with a deadline of September 5, 2018."). Judge Cousins scheduled the settlement conference for August 24, 2018. ECF No. 85.

At the August 24, 2018 settlement conference, Judge Cousins provided the parties a mediator's proposal. 12/21/18 Sandoval Decl. ¶ 17. On September 7, 2018, the County made a written counter-proposal to Madani through Judge Cousins and requested that Madani respond to the proposal by September 12, 2018. *Id.* ¶ 18; *see also id.*, Ex. A (9/7/18 3:48 p.m. Email from Bloom to Judge Cousins). On September 12, 2018, Madani, through Poore, accepted the County's counter-proposal. *Id.* ¶ 19. Specifically, Poore wrote in an email to the County: "Plaintiff Madani accepts the County's counter-proposal to resolve this matter in its entirety, as communicated by Judge Cousins on Monday." *Id.*, Ex. B (9/12/18 4:57 p.m. Email from Poore to the County). On September 12, 2018, Poore emailed the County that "[w]e believe we have an enforceable agreement under federal law." ECF No. 106-1 ("12/24/18 Bloom Decl."), Ex. A (9/12/18 Email from Poore to the County).

The Settlement proposal that Madani accepted provided that the County would recommend to the Board the terms resolving the matter and other claims Madani had against the County through the effective date of the Settlement. 12/21/18 Sandoval Decl., Ex. A ("Settlement"). The terms provided that: (1) the County would pay Madani $32,218.57 within 30 days and separately, though not as a condition of the Settlement, the County would send Madani a check in the gross amount of $49,718.43, to which Madani is entitled as a result of the Personnel Board's March 2018 findings of fact regarding Madani's suspension and demotion, for a total gross amount of $82,000; (2) the County would provide Madani a neutral job reference; (3) within five days of the effective date of the parties' settlement agreement, the County would reinstate Madani's employment, on unpaid leave status, to a Clinical Nurse III, and immediately thereafter, the

County would take the necessary action to restore Madani to the position of Assistant Nurse manager on unpaid leave status; (4) Madani would then immediately retire and resign from the County and the County would accept that resignation; (5) Madani agreed to release and dismiss all claims (except her workers' compensation claims, which are excluded from the release); (6) Madani agreed not to seek reemployment with the County; (7) Madani is responsible for any attorney or medical liens that might apply to the settlement funds; (8) neither party admits liability by settling; (9) Madani would dismiss her lawsuit with prejudice within 3 days of the settlement payment; (10) the parties would jointly move to stay the case pending completion of the settlement; (11) Madani agreed to settle on these terms and acknowledged that the settlement is subject to the approval of the Board; and (12) "[i]f the County's Board of Supervisors approves this settlement, the parties intend to enter into a long-form settlement agreement, but one is not needed for the Board-approved settlement to be enforced by the Court." *Id.*

On September 12, 2018, County attorney Aaron Bloom ("Bloom") then notified Judge Cousins by email that "[t]he parties have agreed to the County's revised settlement terms," copied Poore, and attached the agreed-upon Settlement. 12/21/18 Sandoval Decl. ¶ 20; *see also id.*, Ex. C (9/12/18 Email from Bloom to Judge Cousins). On September 12, 2018, Judge Cousins noted the parties' Settlement on the docket: "Minute Entry for proceedings held before Judge Nathanael M. Cousins. Further Settlement Conference sessions held with counsel on 9/12/2018: Parties have agreed to settlement terms; approval by County Board is required and anticipated." ECF No. 91.

On September 12, 2018, the parties also filed a joint case management statement with the Court. ECF No. 90. The parties wrote: "[t]he Parties attended a Settlement Conference before the Honorable Nathanael M. Cousins on August 24, 2018. On September 12, 2018, the Parties agreed to a settlement proposal contingent on approval by the County of Santa Clara Board of Supervisors." *Id.* As a result, the Court filed an order requesting that the parties by September 17, 2018 "file a statement identifying when the Board will consider the settlement." ECF No. 92.

On September 14, 2018, the parties filed a stipulation with a proposed order to amend the case schedule due to settlement. ECF No. 93. The parties wrote that they "have agreed to a

settlement proposal that will resolve the above-titled litigation" and that the "settlement by its own terms is contingent on approval by the" Board, which was scheduled to consider the settlement on October 15, 2018. *Id.* The parties also requested a stay of the case schedule to "allow the Parties to finalize the settlement following Board approval." *Id.* On September 17, 2018, the Court granted the parties' stipulation and stayed the case. ECF No. 94. The Court continued the next case management conference to November 7, 2018. *See id.*

In October 2018, the County realized that the Settlement had an error in the provision that provided that Madani was entitled to "[s]eparately, and not as a condition of th[e] settlement," a gross amount of $49,718.43 as a result of the Personnel Board's March 2018 findings of fact. *See* Settlement ¶ 1. Instead, Madani was entitled to receive a gross amount of $49,618.88, which constituted a $99.55 difference from the $49,718.43 figure. 12/24/18 Bloom Decl. ¶ 10. On October 15, 2018, before seeking Board approval of the Settlement, Bloom spoke with Poore and confirmed that Madani had no objection to the County resolving the error by sending Madani a check for the amount she was entitled to receive as a result of the Personnel Board's March 2018 findings of fact and by paying Madani the $99.55 difference as part of the Settlement payment. *Id.* ¶ 11. Poore informed Bloom that this was acceptable to Madani. *Id.* The same day, the County sent Madani the $49,618.88 amount she was entitled to receive as a result of the Personnel Board findings of fact. *Id.* ¶ 12.

On October 15, 2018, the County recommended the Settlement to the Board, and the Board approved the Settlement in a closed session, including paying Madani the $99.55 difference as part of the Settlement payment. 12/21/18 Sandoval Decl. ¶ 22; 12/24/18 Bloom Decl. ¶ 13.

As part of the terms of the Settlement, the parties had agreed that "[i]f the County's Board of Supervisors approves this settlement, the parties intend to enter into a long-form settlement agreement, but one is not needed for the Board-approved settlement to be enforced by the Court." Settlement ¶ 12. On October 16, 2018, Bloom emailed Poore a draft long-form settlement agreement. 12/24/18 Bloom Decl. ¶ 15; *see also id.*, Ex. B (10/16/18 Email from Bloom to Poore with long-form agreement attachment). Bloom did not receive a response from Madani or Poore.

5

*Id.* ¶ 16. Thus, on October 22, 2018, Bloom again emailed Poore to confirm receipt of the October 16, 2018 email. *Id.* ¶ 17; *see also id.*, Ex. C (10/22/18 Email from Bloom to Poore). Bloom also asked that Madani complete an attached W-9 Form so that the County could process Madani's settlement check. *Id.* ¶ 17; *see also id.*, Ex. C. Bloom did not receive a response from Madani or Poore. *Id.* ¶ 18. County attorney Karl Sandoval ("Sandoval") emailed Poore on October 25, 2018. *Id.* ¶ 19; *see also id.*, Ex. D (10/25/18 Emails between Sandoval and Poore). Poore responded that same day stating: "I'm waiting to hear final comments from my client. I anticipate getting you the final comments by close of business tomorrow." *Id.*, Ex. D. Bloom stated that his office never received any comments on the draft long-form settlement agreement from Madani or Poore. *Id.* ¶ 20.

On October 29, 2018, Poore emailed the County to inform the County for the first time that Madani had set up an appointment with a retirement counselor at CalPERS and required "additional time to finalize the retirement part of the settlement." *Id.* ¶¶ 21–22; *see also id.*, Ex. E (10/29/18 Email from Poore to the County). On October 31, 2018, Poore informed the County that Poore was in the hospital for a medical procedure, but that Poore hoped to have the Settlement finalized within two to three weeks. *Id.* ¶ 23; *see also id.*, Ex. F (10/31/18 Emails between Poore and Bloom and Sandoval).

On October 31, 2018, the parties filed a joint case management statement with the Court, informing the Court that "Madani's counsel has advised counsel for the County that she is unable to finalize the settlement until she receives further information from CalPERS. Counsel further advises that his client met with a CalPERS representative yesterday and anticipates receiving the additional information she requires from CalPERS in the near future." ECF No. 95. As a result, the Clerk issued a notice on November 2, 2018 continuing the November 7, 2018 case management conference to November 21, 2018. ECF No. 96.

On November 8, 2018, Bloom emailed Poore asking for an update. 12/24/18 Bloom Decl. ¶ 24; *see also id.*, Ex. G (11/8/18 Email from Bloom to Poore). Later that day, Bloom and Poore spoke over the phone. *Id.* ¶ 25. During that call, Poore explained that Madani had questions for the

County regarding her retiree medical benefits and requested a meeting between Madani and a County employee to answer Madani's questions. *Id.* Bloom agreed to identify a County employee to answer Madani's questions. On November 15, 2018, Bloom emailed Poore that Rhonda Schmidt, the County Employee Benefits Program Manager, was available to assist in answering Madani's questions and requested a date for that meeting to occur. *Id.* ¶ 26; *see also id.*, Ex. H (11/15/18 Email from Bloom to Poore). Bloom stated that he did not receive a response to the November 15, 2018 email. *Id.* ¶ 27.

The day before, on November 14, 2018, the parties filed a joint case management statement informing the Court that "Madani has obtained the information she requires from CalPERS, but still requires additional information regarding her medical retirement benefits to finalize the settlement, which she anticipates obtaining within the next 30 days." ECF No. 97. As a result, the Court filed an order requiring the parties to file a joint case management statement proposing a new case schedule through trial and ordering Madani to attend the case management conference set for November 21, 2018 in person. ECF No. 98.

The parties filed a joint case management statement with a proposed schedule on November 19, 2018. ECF No. 99. On November 19, 2018, Poore filed an urgent request to continue the case management conference due to his hospitalization and significant medical issues which prohibited Poore from working for a period of two to three weeks. ECF No. 101. The Court continued the November 21, 2018 case management conference to January 2, 2019, lifted the stay, and set a case schedule through trial. ECF No. 102.

On November 29, 2018, Bloom emailed Poore and requested information about when Madani would sign the long-form settlement agreement; whether Madani intended to sign the long-form settlement agreement; and if Madani would still like to meet with Rhonda Schmidt. 12/24/18 Bloom Decl. ¶ 29. Poore responded that same day stating he had no information to suggest that Madani was not willing to sign a long-form settlement agreement and that Madani has "advised [him] on several occasions that she is willing to do so, but she simply wants to make sure that the process of retirement goes through without any disputes." *Id.* ¶ 30; *see also id.*, Ex. I

United States District Court
Northern District of California

(11/29/18 Emails between Poore and Bloom). Poore also reported that Madani wanted to meet with Rhonda Schmidt regarding her County retirement benefits. *Id.* ¶ 30; *see also id.*, Ex. I.

On December 5, 2018, Rhonda Schmidt met with Madani to answer Madani's questions regarding the County's retirement benefits. *Id.* ¶ 31. Bloom also attended the meeting. *Id.*

On December 7, 2018, Bloom emailed Poore to ask whether Madani was ready to sign the long-form settlement, and if not, what needed to occur before she could sign. *Id.* ¶ 32; s*ee also id.*, Ex. J (12/7/18 Email from Bloom to Poore). Bloom did not receive a response. *Id.* ¶ 33.

Bloom learned that on December 14, 2018, Madani made an "unscheduled appearance" at the County Personnel Board Business Meeting and asked during the public comment portion that the Personnel Board schedule a hearing on her appeal of her termination from the County. *Id.* ¶ 34. This is the same administrative proceeding that Madani agreed to dismiss as a part of the parties' Settlement. *Id.*; *see also* Settlement ¶ 5. Later that date, Bloom emailed Poore to inform Poore that if Madani did not sign the long-form settlement agreement by December 21, 2018, the County would move to enforce the Settlement. 12/24/18 Bloom Decl. ¶ 35; *see also id.*, Ex. K (Emails between Bloom and Poore). After not receiving a response, Bloom again followed-up on December 19, 2108. *Id.* ¶ 36; *see also id.*, Ex. K. Poore responded that same day informing Bloom that he had been in the hospital for most of November and December and was going to meet with Madani that weekend to finalize her signature on the long-form settlement agreement. *Id.* ¶ 36; *see also id.*, Ex. K. Bloom responded on December 20, 2018 that the County would file the instant motion to enforce the settlement if the County did not receive the signed long-form agreement by 1:00 p.m. on Monday, December 24, 2018. *Id.* ¶ 37; *see also id.*, Ex. K. On December 24, 2018, Poore informed the County that Madani would not sign the long-form agreement by 1:00 p.m. *Id.* ¶ 38.

On December 26, 2018, the County filed the instant motion to enforce the parties' settlement. *See* Mot. The parties also filed a stipulation to shorten the time to hear the motion on January 4, 2019, ECF No. 104, which the Court denied, ECF No. 110. The Court nonetheless set the motion for an expedited hearing on January 31, 2019.

8

As of the date of the County's filing of the instant motion to enforce the settlement, the County complains that Madani has not filed any notice of dismissal of her claims against the County (including her pending Personnel Board appeal), has not signed the long-form agreement, has provided no comments on the long-form agreement, and has not provided the County a completed Form W-9. Mot. at 7; 12/24/18 Bloom Decl. ¶ 39.

On December 26, 2018, the parties filed their joint case management statement in anticipation of the January 2, 2019 case management conference. ECF No. 108. In the joint case management statement, the parties wrote: "[t]he Parties entered into a settlement resolving this matter on September 12, 2018. Both Parties agree the settlement is enforceable." *Id.* The County requested a continuance of the deadline to file dispositive motions to allow resolution of the motion to enforce the settlement first. *Id.* In the joint case management statement, Madani wrote that she "does not oppose this requested extension and continues to take the position that the matter has been settled." *Id.*

On January 2, 2019, the Court filed a case management order memorializing the parties' discussions during the January 2, 2019 case management conference. ECF No. 111. The Court wrote: "At the case management conference, Plaintiff's attorney represented that Plaintiff also wishes to enforce the September 12, 2018 settlement, but nonetheless, Plaintiff may oppose or respond to the motion with disputed issues." *Id.* "Plaintiff's counsel stated for the first time that Plaintiff disagreed with Defendant's long form agreement that Defendant sent to Plaintiff on October 16, 2018. Plaintiff's counsel also raised for the first time that Plaintiff disagreed with the amount of her back pay." *Id.*

The Court ordered Madani to serve a document on the County identifying all of Madani's concerns regarding the settlement by January 7, 2019; ordered the parties to file a joint statement by January 9, 2019 confirming service of that document; ordered the parties to meet in person on January 11, 2019 to discuss Madani's concerns regarding the settlement; and ordered the parties to file a joint statement by January 17, 2019 confirming the results of the January 11, 2019 meeting, including whether the long-form agreement and back pay issues were resolved. *Id.* The Court also

9

referred the parties to a conference with Judge Cousins. *Id.* On January 8, 2019, the parties confirmed Madani's service of a document identifying her concerns regarding the Settlement. ECF No. 8.

Madani did not file an opposition to the County's motion. Instead, on January 9, 2019, Madani filed a "response" to the instant motion, ECF No. 116 ("Resp."), a declaration, and a document identifying her areas of disagreement with the Settlement. *See* ECF No. 116-1 "(1/9/19 Madani Decl."); ECF No 116-2 ("Areas of Disagreement Document"). Madani's response focused only on her disagreement with the settlement payment amount and the reinstatement date and resulting retirement consequences of the Settlement. *See* Resp. The response also states: "As set forth in her Declaration, Plaintiff believes that she only consented to a settlement of her case under the above terms." *Id.*; *see also* 1/9/19 Madani Decl.

Two days later, on January 11, 2019, Madani filed an untimely supplemental declaration in support of her response to the instant motion. *See* ECF No. 117 ("1/11/19 Madani Decl."). Madani wrote in her supplemental declaration:

> I did not give my attorney permission or authorization to accept the Defendant's September 2018 settlement proposal. I did not give my attorney consent to accept the Defendant's September 2018 settlement proposal. I believe there had been a miscommunication and my attorney misunderstood my consent to one item on the settlement as my permission in communicating acceptance of the settlement to Judge Cousins.

*Id.* ¶ 3.

The parties met with Judge Cousins on January 15, 2019. ECF No. 118. The County replied on January 16, 2019. *See* ECF No. 119 ("Reply").

On January 17, 2019, while the instant motion to enforce the settlement was pending, Poore filed a motion to withdraw. ECF No. 120. In the motion, Poore gives two reasons for withdrawal: (1) Madani has discharged Poore's services; and (2) Poore's withdrawal is mandatory under California Rules of Professional Conduct 1.16 because Poore "has certain mandatory obligations to this Court, which would be violated if there existed continued legal representation in this matter." *Id.*

Case No. 16-CV-07026-LHK
ORDER GRANTING MOTION TO ENFORCE THE SETTLEMENT

On January 17, 2019, the parties filed a joint case management statement explaining that the meeting with Judge Cousins dissolved after Poore informed the County that he intended to file a motion to withdraw because Madani had terminated his services. ECF No. 121. On January 28, 2019, the County filed a statement of non-opposition to the motion to withdraw. ECF No. 123.

## II.    LEGAL STANDARD

District courts have the inherent power to enforce a settlement agreement in an action pending before it. *See TNT Marketing, Inc. v. Aaresti*, 796 F.2d 276, 278 (9th Cir. 1986). "The moving party has the burden of demonstrating that the parties formed a legally enforceable settlement agreement." *Woods v. Carey*, 2015 WL 7282749, *4 (E.D. Cal. Nov. 18, 2015). "The construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally." *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989). This is true even if the underlying cause of action is based upon a federal statute. *Woods*, 2015 WL 7282749 at *4. Thus, the Court applies California law "regarding formation and interpretation of contracts in determining whether a legally enforceable settlement agreement was reached." *Id.*

Under California law, the essential elements of a contract are: the parties capable of contracting; a lawful object; the parties' consent; and sufficient cause or consideration. *Lopez v. Charles Schwab & Co., Inc.*, 118 Cal. App. 4th 1224, 1230 (2004) (citing Cal. Civil Code § 1550). "An essential element of any contract is the consent of the parties, or mutual assent. Mutual assent usually is manifested by an offer communicated to the offeree and an acceptance communicated to the offeror." *Id.* (citing Cal. Civil Code §§ 1550 and 1565). "The existence of mutual consent is determined by objective rather than subjective criteria, the test being what the outward manifestations of consent would lead a reasonable person to believe." *Weddington Prods., Inc. v. Flick*, 60 Cal. App. 4th 793, 811 (1998) (quoting *Meyer v. Benko*, 55 Cal. App. 3d 937, 942–43 (1976)).

If a valid agreement exists under state law, it must additionally meet two federal requirements. First, it must be a complete agreement. *Maynard v. City of San Jose*, 37 F.3d 1396,

United States District Court
Northern District of California

1401 (9th Cir. 1994); *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987). Second, both parties must have directly agreed to be bound by the terms of the settlement or have authorized their respective representatives to settle the dispute. *Harrop v. Western Airlines, Inc.*, 550 F.2d 1143, 1144–45 (9th Cir. 1977).

## III.    DISCUSSION

Based on the parties' submissions, the relevant law, and the record in this case, the Court finds that the parties entered into an enforceable settlement agreement.

### A.    The County has Met its Burden of Demonstrating a Legally Enforceable Settlement Agreement Under California Law

The County has met its burden of demonstrating a legally enforceable settlement agreement under California law. First, pursuant to California Civil Code § 1556, all persons are capable of contracting "except minors, persons of unsound mind, and persons deprived of civil rights." None of these exceptions apply to Madani or the County, and neither party contests that this requirement has been met. Second, the object of the Settlement is lawful. The Settlement provides for Madani's reinstatement and retirement from the County, that the County pay Madani a Settlement payment, and that Madani release her claims against the County. *See* Settlement.

Third, under an objective analysis, the parties mutually agreed to settle this case. *See Lopez*, 118 Cal. App. 4th at 1230 ("An essential element of any contract is the consent of the parties, or mutual assent."). The County put forward evidence showing that on September 7, 2018 the County made a written counter-proposal to Madani through Judge Cousins. 12/21/18 Sandoval Decl. ¶ 18; *see also id.*, Ex. A. The counter-proposal consisted of a document containing twelve written paragraphs of terms. S*ee* Settlement. Thus, "all of the terms [were] definitely understood," and acceptance would "ordinarily result in a binding contract." *See* 1 Witkin, Summary 11th Contracts § 133 (2018). The County also put forward evidence demonstrating that on September 12, 2018, Madani, through Poore, accepted the County's counter-proposal. *Id.* ¶ 19; *see also id.,* Ex. B. Specifically, Poore's email stated "Plaintiff Madani accepts the County's counter-proposal to resolve this matter in its entirety, as communicated by Judge Cousins on Monday." *Id.*, Ex. B.

12

Therefore, the email acceptance makes clear that Madani agreed to be bound by the terms of the Settlement as laid out in the Settlement document. S*ee* Settlement; *see also Weddington Prods., Inc.*, 60 Cal. App. 4th at 811 ("The existence of mutual consent is determined by objective rather than subjective criteria, the test being what the outward manifestations of consent would lead a reasonable person to believe.").

Post-acceptance acts confirm the parties' consent. On September 12, 2018, Poore emailed the County that "[w]e believe we have an enforceable agreement under federal law." 12/24/18 Bloom Decl., Ex. A. On September 12, 2018, Judge Cousins noted the parties' Settlement on the docket: "Minute Entry for proceedings held before Judge Nathanael M. Cousins. Further Settlement Conference sessions held with counsel on 9/12/2018: Parties have agreed to settlement terms; approval by County Board is required and anticipated." ECF No. 91. On September 12, 2018, the parties filed a joint case management statement with the Court. ECF No. 90. The parties wrote: "[t]he Parties attended a Settlement Conference before the Honorable Nathanael M. Cousins on August 24, 2018. On September 12, 2018, the Parties agreed to a settlement proposal contingent on approval by the County of Santa Clara Board of Supervisors." *Id.* On September 14, 2018, the parties filed a stipulation with a proposed order to amend the case schedule due to settlement. ECF No. 93. The parties wrote that they "have agreed to a settlement proposal that will resolve the above-titled litigation" and that the "settlement by its own terms is contingent on approval by the" Board, which was scheduled to consider the settlement on October 15, 2018. *Id.* The Board's approval was obtained on October 15, 2018. 12/21/18 Sandoval Decl. ¶ 22; 12/24/18 Bloom Decl. ¶ 13.

In addition, on November 8, 2018, Madani requested a meeting with a County employee to discuss Madani's County retiree medical benefits resulting from the Settlement. *Id.* ¶¶ 25–26. On November 15, 2018, Bloom stated that Rhonda Schmidt, the County Employee Benefits Program Manager, was available to meet with Madani. *Id.* ¶ 26. After some delay, Madani finally met with Schmidt on December 5, 2018, to discuss Madani's retirement benefits resulting from the Settlement. *Id.* ¶ 31. Bloom also attended that meeting. *Id.* Thus, Madani's own actions contradict

13

1    her claim that she was unaware of the Settlement or unaware that her attorney had agreed to the

2    Settlement on her behalf.

3         Fourth, the Settlement is supported by consideration. Consideration is satisfied when a

4    party (1) confers or agrees to confer a benefit on a party not entitled to that benefit, or (2) suffers

5    or agrees to suffer a prejudice that a party is not legally bound to suffer. Cal. Civ. Code § 1605;

6    *see* 1 Witkin, Summary 11th Contracts § 202 (2018) ("Consideration may be an act, forbearance,

7    change in legal relations, or a promise."). Here, the Settlement provided, among other things that

8    the County would pay Madani a Settlement payment, and in exchange, Madani would dismiss her

9    lawsuit against the County with prejudice within 3 days of the settlement payment. *See* Settlement

10   ¶¶ 1, 9. Therefore, the Settlement is supported by consideration.

11        **B. The Settlement Agreement is Valid Under Federal Law**

12        The Court turns next to the federal requirements. For the reasons given below, the Court

13   finds that the Settlement is complete and that—despite Madani's assertions to the contrary—

14   Madani agreed to be bound by the terms of the settlement.

15        **1. The Settlement is Complete**

16        The Court finds that the Settlement is a complete agreement, as it contains all material

17   terms and the Court has enough information to determine the scope of the parties' respective

18   duties. *See Maynard*, 37 F.3d at 1401; *Callie*, 829 F.2d at 890 (9th Cir. 1987) ("[T]he district court

19   may enforce only *complete* settlement agreements . . . Where material facts concerning the

20   *existence* or *terms* of an agreement to settle are in dispute, the parties must be allowed an

21   evidentiary hearing."). Here, unlike cases concerning oral agreements,[1] or a series of proposals

22   and counter-proposals made in letters or emails,[2] where an evidentiary hearing may be needed to

23   ascertain the terms of an agreement to settle, the terms of the Settlement in the instant case were

24   clearly written down and attached to the email offer that the County sent to Madani through Judge

25

26

27   ---
     [1] *See, e.g.*, *Lee v. Retail Store Employee Bldg. Corp.*, No. 15-CV-04768-LHK, 2018 WL 385207
     (N.D. Cal. Jan. 10, 2018), *appeal dismissed*, 2018 WL 3825472 (9th Cir. July 20, 2018).
     [2] *See, e.g.*, *Callie*, 829 F.2d at 889–90.

28

Cousins. *See* 2/21/18 Sandoval Decl. ¶ 18; *see also id.*, Ex. A (9/7/18 3:48 p.m. Email from Bloom to Judge Cousins with Settlement attachment).

The Settlement terms specifically provided that: (1) the County would pay Madani $32,218.57 within 30 days and separately, though not as a condition of the settlement, the County would send Madani a check in the gross amount of $49,718.43, which she is entitled to as a result of the Personnel Board's March 2018 findings of fact regarding Madani's suspension and demotion, for a total gross amount of $82,000; (2) the County would provide Madani a neutral job reference; (3) within five days of the effective date of the parties' settlement agreement, the County would reinstate Madani's employment, on unpaid leave status, to a Clinical Nurse III, and immediately thereafter, the County would take the necessary action to restore Madani to the position of Assistant Nurse manager on unpaid leave status; (4) Madani would immediately retire and resign from the County and the County would accept that resignation; (5) Madani would release and dismiss all claims (except her workers' compensation claims, which are excluded from the release); (6) Madani agreed not to seek reemployment with the County; (7) Madani is responsible for any attorney or medical liens that might apply to the settlement funds; (8) neither party admits liability by settling; (9) Madani would dismiss her lawsuit with prejudice within 3 days of the settlement payment.; (10) the parties would jointly move to stay the case pending completion of the settlement; (11) Madani agreed to settle on these terms and acknowledges that the settlement is subject to the approval of the Board; and (12) "[i]f the County's Board of Supervisors approves this settlement, the parties intend to enter into a long-form settlement agreement, but one is not needed for the Board-approved settlement to be enforced by the Court." *See* Settlement.

Further, the Settlement was conditioned on Board approval, *see* Settlement ¶ 11, and this condition was met on October 15, 2018. *See* 12/21/18 Sandoval Decl. ¶ 22; 12/24/18 Bloom Decl. ¶ 13. Moreover, that the parties never signed the long-form settlement agreement is of no matter, because the Settlement specifically provided that "[i]f the County's Board of Supervisors approves this settlement, the parties intend to enter into a long-form settlement agreement, *but one is not*

15

*needed for the Board-approved settlement to be enforced by the Court.*" *See* Settlement ¶ 12

(emphasis added); *see also Blix St. Records, Inc. v. Cassidy*, 191 Cal. App. 4th 39, 48–49 (2010)

("When parties intend that an agreement be binding, the fact that a more formal agreement must

be prepared and executed does not alter the validity of the agreement.") (citing *Mitchell v.*

*Exhibition Foods, Inc.*, 184 Cal. App. 3d 1033, 1048 (1986); *compare Weddington Productions,*

*Inc.*, 60 Cal. App. 4th at 812 ("[I]f an essential element is reserved for the future agreement of

both parties, as a general rule the promise can give rise to no legal obligation until such future

agreement.").

      Therefore, having found the Settlement complete and written, and having found all

necessary conditions for Settlement met, particularly Board approval, the Court concludes that no

evidentiary hearing is needed per *Callie* to determine the terms of the Settlement. *See Callie*, 829

F.2d at 890 ("[T]he district court may enforce only *complete* settlement agreements . . . Where

materials facts concerning the *existence* or *terms* of an agreement to settle are in dispute, the

parties must be allowed an evidentiary hearing.").

### 2. Madani's Counsel Had Authorization to Settle

      Finally, the Court considers whether both parties directly agreed to be bound by the terms

of the Settlement or authorized their respective representatives to settle the dispute. *Harrop*, 550

F.2d at 1144–45. Madani did not file an opposition to the instant motion. Instead, Madani filed a

"response" on January 9, 2019, in which she stated, without factual detail or support, that she

believed she settled on terms either contrary to or absent from the Settlement. *See* Resp; *see also*

11/9/19 Madani Decl. In particular, Madani disagreed with the amount of the settlement payment

and the dates of reinstatement and resulting retirement consequences. *See* Resp.

      Then two days after her response, on January 11, 2019, Madani untimely filed a

supplemental declaration that completely changed her position. Madani claimed in that

declaration, without factual detail or support, that there was no settlement *at all* because she did

not give her attorney consent to settle and her attorney "misunderstood [her] consent to one item

on the settlement as [her] permission in communicating acceptance of the settlement to Judge

Cousins." 1/11/19 Madani Decl. ¶ 3.

State law governs whether an attorney was authorized to bind a client to a settlement agreement, and California courts apply general agency rules to the attorney-client relationship. *See Yanchor v. Kagan*, 22 Cal. App. 3d 544, 549 (1971). Under these rules, an attorney does not have implied authority to settle a case through his representative role in pending litigation. *Blanton v. Womancare, Inc.*, 38 Cal. 3d 396, 404 (1985). Rather, "specific authorization" from the client is required to bind a client to a compromise settlement. *Bice v. Stevens*, 160 Cal. App. 2d 222, 231– 32 (1958). A client may, however, bind herself by ratifying the unauthorized acts of her attorney. *Blanton*, 38 Cal. 3d at 408 (citing *Fidelity & Cas. Co. of N.Y. v. Abraham*, 70 Cal. App. 2d 776, 783 (1945)). This is because a principal may not both receive the advantages of an agreement and escape its burdens by later repudiation: "it would be unfair to allow [her] both to have [her] cake and eat it too." *Alvarado Cmty. Hosp. v. Superior Court*, 173 Cal. App. 3d 476, 481 (1985). "[T]he County has the burden to show that [Madani] gave express authority to her lawyer, ratified the settlement, or executed the settlement herself." *Ellerd v. Cnty. of L.A.*, 273 F. App'x 669, 670 (9th Cir. 2008) (citing *Blanton*, 38 Cal. 3d at 396).

Here, Madani provides no specific details or factual support, such as statements, emails, or other evidence, to show that she did not authorize her counsel to accept the settlement on her behalf. The Court additionally calls into question the credibility of Madani's claim because when Madani first responded to the County's motion on January 9, 2019, she effectively asserted the parties did have a Settlement; indeed, Madani only argued that she disagreed with the settlement payment amount and reinstatement dates. It was only two days after her response that Madani first came forward on January 11, 2019, to assert that she did not give her counsel authorization. But regardless of whether Madani gave her counsel permission to accept the Settlement on Madani's behalf, the record is clear that Madani ratified the acts of her counsel by remaining silent despite Poore's repeated representations to the County and the Court that the parties had settled. *See NORCAL Mut. Ins. Co. v. Newton*, 84 Cal. App. 4th 64, 78 (2000) ("A principal is liable when the principal knows the agent holds himself or herself out as clothed with certain authority and

Case No. 16-CV-07026-LHK
ORDER GRANTING MOTION TO ENFORCE THE SETTLEMENT

remains silent." (internal citations omitted)). "A principal's failure to promptly disaffirm an agent's conduct on her behalf constitutes a ratification." *Id.* at 79.

As an initial matter, in the four months that passed between the date of the Settlement and Madani's supplemental declaration, Poore made repeated representations to the County *and* the Court that the case had settled. For instance, on September 12, 2018, Poore wrote "Plaintiff Madani accepts the County's counter-proposal to resolve this matter in its entirety, as communicated by Judge Cousins on Monday" and that "[w]e believe we have an enforceable agreement under federal law." 12/21/18 Sandoval Decl., Ex. B; 12/24/18 Bloom Decl., Ex. A.

The County joined in this understanding. On September 12, 2018, for instance, the parties wrote in a joint case management statement with the Court that "[t]he Parties agreed to a settlement proposal contingent on approval by the County of Santa Clara Board of Supervisors." ECF No. 90. On December 26, 2018, the parties filed a further joint case management statement stating: "[t]he Parties entered into a settlement resolving this matter on September 12, 2018. Both Parties agree the settlement is enforceable." ECF No. 108. Even further, the joint case management statement stated that Madani "continues to take the position that the matter has been settled." *Id.*

In addition, Judge Cousins, and this Court, both relying on Poore's representations, also made multiple statements on the record reflecting that Madani had settled. For example, on September 12, 2018, Judge Cousins noted the parties' Settlement on the docket: "Minute Entry for proceedings held before Judge Nathanael M. Cousins. Further Settlement Conference sessions held with counsel on 9/12/2018: Parties have agreed to settlement terms; approval by County Board is required and anticipated." ECF No. 91.

On September 17, 2018, the Court stayed the case because of the representation that the parties had settled. ECF No. 94. On January 2, 2019, the Court filed a case management order memorializing the parties' discussions during the January 2, 2019 case management conference. ECF No. 111. Specifically, the Court wrote: "At the case management conference, Plaintiff's attorney represented that Plaintiff also wishes to enforce the September 12, 2018 settlement." *Id.*

18

Despite the representations of her counsel, as reflected in his statements and well as statements by the County, Judge Cousins and the Court, Madani remained silent and raised no concerns for over four months. Indeed, even Madani's response to the instant motion made no assertion that she did not give Poore permission to accept the Settlement. Instead, it was only in her supplemental declaration filed two days after her response, on January 11, 2019, that Madani first raised any argument that her attorney lacked authority. Such a delay in repudiating the actions of her counsel does not protect Madani from being bound by the actions of her counsel. *See, e.g.*, *Gates v. Bank of Am. Nat. Trust & Savings Ass'n*, 120 Cal. App. 571, 576–77 (1953) ("[W]here the rights of third persons depend on his election, the rule is a principal must disaffirm an unauthorized act of his agent within a reasonable time after acquiring knowledge thereof, else his silence may be deemed ratification or acquiescence in order to protect an unsuspecting third party."); *Gaine v. Austin*, 58 Cal. App. 2d 250, 260 (1943) (finding four-month delay before repudiation constituted ratification).

Moreover, Madani makes no assertion that she was unaware that her counsel informed the County, Judge Cousins, or the Court that she had agreed to the Settlement. *See, e.g.*, *NORCAL Mut. Ins. Co.*, 84 Cal. App. 4th at 79 ("Her declaration does *not* state she was unaware of these legal demands being asserted on her behalf, and there is nothing in the record to suggest that she did anything to disavow or disassociate herself from them." (emphasis in original)); *Goldie v. Caliber Home Loans, Inc.*, No. 2:16-cv-00962-KJM-DB, 2018 WL 4659576, at *9 (E.D. Cal. 2018) ("Goldie's omissions are as telling as are his affirmative representations. He does not address, much less disclaim, his counsel's numerous representations to the court that the parties were pursuing settlement by way of a loan modification."). Indeed, Madani's own actions contradict her claim that she was not aware of the Settlement. The County scheduled a meeting with Rhonda Schmidt, the County Employee Benefits Program Manager, in response to Madani's request for information about the consequences of the Settlement. *Id.* ¶¶ 25–26. On December 5, 2018, Madani met with Schmidt to discuss Madani's retirement benefits, and Bloom attended that meeting. *Id.* ¶ 31.

Case No. 16-CV-07026-LHK
ORDER GRANTING MOTION TO ENFORCE THE SETTLEMENT

Further, the Court adds that "it would be unfair to allow [Madani] both to have [her] cake and eat it too." *Alvarado Cmty. Hosp.*, 173 Cal. App. 3d at 481. Madani wishes to continue to proceed with her suit against the Country without acknowledging or offering to return the benefits she has already been conferred, including the stay of the case and continuance of deadlines; the check that the County gave Madani in October 2018 as a result of the Personnel Board findings of fact, and which Madani immediately cashed, *see* ECF No. 119-2 ("1/16/19 Bloom Decl.") ¶ 8; and the assistance from the County's retirement coordinator, *id.* ¶ 10. *See Goldie*, 2018 WL 4659576 ("Nonetheless, Goldie wishes to proceed with his suit against Caliber without returning or offering to return the benefits Caliber conferred to him under the settlement agreement. . . . Goldie cannot disclaim his counsel's authority to enter into the settlement agreement, retain every benefit of the parties' agreement, but refuse to abide by that agreement and proceed with this suit."); *see also Navrides v. Zurich Ins. Co.*, 5 Cal 3d. 698, 704 (1971) (recognizing "the elementary rule of agency law that a principal is not allowed to ratify the unauthorized acts of an agent to the extent that they are beneficial, and disavow them to the extent that they are damaging.").

Finally, Madani's repeated pattern of behavior in this case calls into question her credibility. Indeed, this is the second time Madani has settled with the County, received Board approval, subsequently fired her attorney, and tried to renegotiate the settlement. Around October of 2017, Madani and the County reached a settlement when Madani was represented by Madani's first attorney, Seth Wiener. 12/21/18 Sandoval Decl. ¶¶ 4–5. That first settlement received Board approval. *Id.* But instead of complying with that settlement, Madani fired Wiener in January of 2018, and tried to renegotiate the settlement. ECF No. 59.

Almost exactly a year later, on September 12, 2018, Madani and the County reached the instant Settlement while Madani was represented by Poore. On October 15, 2018, the Board approved the Settlement. 12/21/18 Sandoval Decl. ¶ 22. Madani has since refused to comply, has fired Poore, and now again tries to renegotiate the Settlement. ECF No. 120. Even Poore appears to acknowledge Madani's bad faith in his motion to withdraw in which he states that Madani has discharged Poore's services, and that Poore's withdrawal is mandatory under California Rules of

1  Professional Conduct 1.16 because Poore "has certain mandatory obligations to this Court, which

2  would be violated if there existed continued legal representation in this matter." ECF No. 120. To

3  decline to enforce the instant Settlement would reward Madani's bad faith conduct.

4        Accordingly, the Court finds that the record clearly establishes that Madani ratified the

5  actions of her counsel. Thus, Madani is bound by the Settlement.

6        Finally, Madani did not request an evidentiary hearing. *See, e.g.*, *Maynard*, 37 F.3d at 1401

7  ("By failing to request an evidentiary hearing in the district court, the defendants waived their

8  right to raise the issue on appeal."). Regardless, because there is no factual dispute in the record

9  that Madani ratified the acts of her counsel through her post-acceptance actions, the Court need

10 not provide her an evidentiary hearing. *Cf. Callie* 829 F.2d at 890 ("Where materials facts

11 concerning the *existence* or *terms* of an agreement to settle are in dispute, the parties must be

12 allowed an evidentiary hearing.").

13 **IV.    CONCLUSION**

14       For the foregoing reasons, the County's motion to enforce the settlement agreement is

15 GRANTED. Pursuant to the Settlement, the Court orders that this action be dismissed with

16 prejudice. The Clerk shall close the file.

17 **IT IS SO ORDERED.**

18

19 Dated: January 31, 2019

20                               *Lucy H. Koh*

21                          LUCY H. KOH
                         United States District Judge

22

23

24

25

26

27

28

Case No. 16-CV-07026-LHK
ORDER GRANTING MOTION TO ENFORCE THE SETTLEMENT